IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GGNSC MONTGOMERY, LLC, *doing business as* GOLDEN LIVING CENTER MONTGOMERY, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACT. NO.  2:12cv711-CSC ) |
| KAREN F. NORRIS, *Administratrix of the Estate of Leila Jackson Scott, deceased*, | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

**I.  Introduction**

Plaintiff GGNSC Montgomery, LLC d/b/a Golden LivingCenter Montgomery, ("GGNSC"), filed this action against the defendant, Karen Norris ("Norris"), the Administratrix of the Estate of Leila Jackson Scott, to compel arbitration of all claims asserted by Norris against GGNSC in her state court case pending in the Circuit Court of Montgomery County, Alabama.  The court has jurisdiction of this matter pursuant to its diversity jurisdiction, 28 U.S.C. § 1332, and in accordance with its jurisdictional grant contained in the Federal Arbitration Act, 9 U.S.C. § 4.  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

This action is now pending before the court on the plaintiff's motion to compel arbitration (doc. # 1).  The defendant opposes the motion arguing that the arbitration agreement is unenforceable "because the entity selected to conduct the arbitration is no longer in that business."  (Doc. # 5 at 3).  Consequently, she asserts that she should not be bound by the agreement because it is "a legal nullity."  (Doc. # 6 at 1).  After careful review of the motion, the briefs filed in support of and in opposition to the motion, and the supporting and opposing evidentiary materials, the court concludes that the motion to compel arbitration is due to be granted.

## II.  Facts

The facts are undisputed.  Decedent Leila Jackson Scott was first admitted to GGNSC on April 27, 2004.  (Doc. # 2, Ex. 3 at 2, ¶ 3).  During the admission process, Scott's daughter and authorized representative, Carolyne Norris, signed an arbitration agreement. The arbitration agreements provide, in pertinent part, as follows:

> The parties to this Arbitration Agreement acknowledge and agree that upon execution, this Arbitration Agreement becomes part of the Admission Agreement, and that the Admission Agreement evidences a transaction involving interstate commerce governed by the Federal Arbitration Act.  It is understood and agreed by Facility and Resident that any and all claims, disputes, controversies (hereafter collectively referred to as a "claim" or collectively as "claims") arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in accordance with the National Arbitration Forum Code of Procedure, which is hereby incorporated into this Agreement\] (sic), and not by a lawsuit or resort to court process.  This agreement shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16.

This agreement to arbitrate includes, but is not limited to, any claim for payment, nonpayment, or refund for services rendered to the Resident by the Facility, violations of any right granted to the Resident by law or by the Admission Agreement, breach of contract, fraud or misrepresentation, negligence, gross negligence, malpractice, or claims based on any departure from accepted medical or health care or safety standards, as well as any and all claims for equitable relief or claims based on contract, tort, statute, warranty, or any alleged breach, default, negligence, wantonness, fraud, misrepresentation, suppression of fact, or inducement. . . .

\*     \*     \*

It is the intention of the parties to this Arbitration Agreement that it shall inure to the benefit of and bind the parties, their successors, and assigns, including without limitation the agents, employees, and servants of the Facility, and all persons whose claim is derived through or on behalf of the Resident, including any parent, spouse, sibling, child, guardian, executor, legal representative, administrator, or heir of the Resident.  The parties further intend that this agreement is to survive the lives or existence of the parties hereto.

\*     \*     \*

**THE PARTIES UNDERSTAND AND AGREE THAT THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES, AND THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT, THE PARTIES ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY, AS WELL AS ANY APPEAL FROM A DECISION OR AWARD OF DAMAGES**.

\*     \*     \*

(Doc. # 2, Ex. 4, Att. A, Arbitration Agreement at 1-2) (emphasis in original).

Carolyne Norris signed another, identical arbitration agreement upon Ms. Scott's readmission to GGNSC on July 16, 2006.  (*Id.*)

Carolyne Norris died on January 18, 2009.  On February 19, 2010, while a resident

3

of GGNSC, Leila Scott died.  Defendant Karen Norris was appointed Administratrix of her estate on August 11, 2010.

On December 20, 2011, Norris, as the Administratrix of the Estate of Scott, filed suit against Golden Living Center and others asserting medical malpractice claims against the defendants related to the death of her mother.  (Doc. # 1, Ex. 1).

GGNSC filed this action to compel arbitration on August 17, 2012.

### III.  Standard of Review

Pursuant to the Federal Arbitration Act ("FFA"), "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. Under the FFA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement" may petition the court "for an order directing that such arbitration proceed."  9 U.S.C. § 4.

The FAA "seeks broadly to overcome judicial hostility to arbitration agreements and that [it] applies in both federal and state court."  *Allied-Bruce Terminix Cos., Inc. v. Dobson* 513 U.S. 265, 272 (1995).  *See also, Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89 (2000) ("In considering whether respondent's agreement to arbitrate is unenforceable, we are mindful of the FAA's purpose 'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements on the same footing as other contracts.'"). The court is cognizant of the Supreme Court's instructions that, under the FAA, "any doubts

concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983). Furthermore, "as with any contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985). The FFA "declare[s] a national policy favoring arbitration." *Nitro-Lift Technologies, LLC, v. Howard*, — U.S. —, 133 S.Ct. 500, 503 (2012) *quoting Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). *See also Marmet Health Care Cnt., Inc. v. Brown*, — U.S. —, 132 S.Ct. 1201, 1203 (2012) (federal policy is one "in favor of arbitral dispute resolution"); *CompuCredit Corp. v. Greenwood*, — U.S. —, 132 S.Ct. 665, 669 (2012) (FFA evinces "a liberal federal policy favoring arbitration agreements."); *Green Tree*, 531 U.S. at 91 (federal policy liberally favors arbitration agreements) .

After hearing the parties[1], if the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court shall direct the parties "to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

## IV.  Discussion

The parties do not dispute that the arbitration agreements in question involve interstate

---

[1]  The parties have thoroughly briefed the issue of arbitration and submitted evidentiary materials in support of their respective positions.

commerce and that the agreements are within the scope of the Federal Arbitration Act. *See* Docs. # 1 at ¶ and Doc. # 5 at ¶5. The plaintiff asks the court to order arbitration pursuant to the FAA on the basis that a valid agreement to arbitrate exists between the parties. Relying on *Stewart v. GGNSC-Canonsburg, L.P.*, 9 A.3d 215 (Pa. Super 2010), a Pennsylvania intermediate appellate court decision, the defendant argues that the agreements are not enforceable because the entity selected to conduct the arbitration is no longer available. Her reliance is misplaced because this court, of course, is bound by Circuit precedence. In a well-reasoned opinion, the Eleventh Circuit has squarely addressed this issue.

> Brown also argues that the arbitration clause is void because the specified forum, the National Arbitration Forum (NAF), had dissolved. This argument is without merit. Section 5 of the FAA provides a mechanism for appointment of an arbitrator where "for any [ ] reason there shall be a lapse in the naming of an arbitrator . . ." 9 U.S.C. § 5 (West 2000). The unavailability of the NAF does not destroy the arbitration clause.

*Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000).

The Eleventh Circuit held that where "there is no evidence that the choice of the NAF as the arbitration forum was an integral part of the agreement to arbitrate," a substitute arbitrator may be selected. *Id*.

> Only if the choice of forum is an integral part of the agreement to arbitrate, rather than an "ancillary logistical concern" will the failure of the chosen forum preclude arbitration.

*Id*.

In this case, the court concludes that the NAF is an "ancillary logistical concern"

rather than an "integral part of the agreements." First, the Agreements require claims to be resolved exclusivity by binding arbitration. Clearly, the intent of the Arbitration Agreements is that all claims are to be resolved through arbitration, and not litigation. *See Khan v. Dell, Inc.*, 669 F.3d 350, 355 (3rd Cir. 2012) ("intent to arbitrate [ ] trumped the designation of a particular arbitrator who was no longer available.") Next, there is no evidence before the court that the NAF was an integral part of either Arbitration Agreement. The defendant argues that while she may be bound by the agreement to "arbitrate with the "National Arbitration Forum" pursuant to the "National Arbitration Code of Procedure," she did not agree to arbitrate "under any other set of rules or procedures." (Doc. # 6 at 5). According to the defendant, the NAF is an integral part of the Agreements because otherwise, the court would have to redraft the Arbitration Agreements. The court disagrees. The defendant ignores the language in both Arbitration Agreements that specify that the Agreements are "governed and interpreted under the Federal Arbitration Act." (Doc. # 2, Ex. 4, Att. A & B). Pursuant to the FFA, section 5 provides a method for selecting an arbitrator "if for any other reason there shall be a lapse in the naming of an arbitrator." 9 U.S.C. § 5. *See also Brown*, 211 F.3d at 1222 ("Where the chosen forum is unavailable, however, or has failed for some reason, § 5 applies and a substitute arbitrator may be named."); *Obremski v. Springleaf Fin. Servs., Inc*., 2012 WL 3264521, *4 (M.D. Fla., Aug. 10, 2012) (No. 8:12-cv-1594-T-33AEP) ("Section 5 of the FFA specifically provides that in circumstances such as these the court shall appoint an alternate arbitrator."); *Sankey v. Sears, Roebuck & Co.*, 100 F.Supp.2d 1290, 1298 (M.D. Ala. 2000) ("The court will invoke § 5 of the FFA and give the parties until July

7, 2000 to jointly agree on an arbitrator..."); *Stinson v. America's Home Place, Inc.*, 108 F.Supp.2d 1278, 1285 (M.D. Ala. 2000) ("Although the arbitrator specified in [the plaintiff's] contract . . . is not now available . . ., there is no indication that the choice of that particular arbitrator was central to the arbitration clause.  In such cases, § 5 dictates that the court choose another arbitrator and enforce the arbitration clause.")

Finally, any ambiguities in the Agreements must be resolved in favor of arbitration. *See Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989) ("ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration"); *Moses H. Cone Mem'l Hosp.*, 489 U.S. at 475 ("any doubts concerning the scope of arbitrable issues  . . . be resolved in favor of arbitration.") *See generally E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("ambiguities in the language of the agreement should be resolved in favor or arbitration.")

For the reasons as stated, the court concludes that the NAF is not an "integral part" of the Arbitration Agreements, and that the Agreements should be enforced in accordance with the FFA.

## V.  Conclusion

Accordingly, it is

ORDERED and ADJUDGED as follows:

1. That the plaintiff's motion to compel arbitration (doc. # 1) be and is hereby GRANTED.

2. That the parties shall have until on or before **March 20, 2013**, to jointly agree

8

on an arbitrator which the court will then appoint to arbitrate this matter.  If the parties cannot agree on an arbitrator, the parties shall file a joint status report on or before March 20, 2013 advising the court that an agreement was not reached, at which time the court will appoint an arbitrator.

3.      Pursuant to 9 U.S.C. § 3, this case be and is hereby STAYED and ADMINISTRATIVELY CLOSED pending notification by the parties that arbitration is complete.

4.      Beginning on **June 1, 2013**, the plaintiff shall file a status report every 60 days concerning the status of arbitration until a decision is rendered.  The monthly status report shall be filed no later than the fifth day of each month.

Done this 20th day of February, 2013.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE